Mr. Wang May 8, please, the court. Good morning, your honors. My name is Kevin Wang. I'm the attorney for a penitent, and also I'm the inventor of this invention. Before I proceed with my oral argument, I want to thank you, the court, for giving the opportunity to present my invention. So I want to talk about a short background about this invention, how it developed. So I'm the stamp collector for many years. So around 15 years ago, I had a habit to collect stamp cover. So at the moment, most of the popular online auction is from eBay. So I participate a lot on auction through eBay. But eBay is open bid auction. So really, the auction takes seven days. So I need to wait last second to win the auction to meet my habit of collect stamp cover. So most of times, I'm busy, and lawyer press law, I cannot pass the last second. Then even I win before the last second, most of the collectors know how it works. And all the bid me at last second. Therefore, most of the time, I lost. And when more and more sellers and other people know I have a habit for certain covers, they always build up price. I think ID, by the register, the bidder should build up the price. If I did not participate that auction, the price of that cover were low. If I participate, the price were high because people know. So what does that have to do with a computer? Because you could take that same approach without using a computer and just do it on a pencil and paper basis, right? Yes, Your Honor. So you read that question, I think Your Honor may read the article that I read the argument. The Professor Seaman Parson, that's an article related to auction and bidding, a guide for computer scientists. This article, the background information were cited and introduced by the USPTO examiners. So in that article, the USPTO examiner introduced article means that this article is admissible, that he agrees with the position of Professor Seaman. Is there anything in Professor Parson that says what you're talking about is a technical problem or that there's a technical solution to it? It seems that the problems you identify also could plague offline auctions as much as online auctions. So what in Professor Parson would show otherwise? Okay, yes, Your Honor. So if you open the brief, page 12, so in the appendix, page 375, so the appendix 375 and the brief, document 89, page 15. I've got appendix 375, is this part of Parson? Yeah, yeah, and you can open the brief, the document 89, page 15, filed on November 2nd. Is it page 15 of your opening brief? Yeah, document 89, page 15, the opening brief. So Professor Parson very clearly identified the technical problem that in the online auction. So if you want to permit me to read a short part. This is your read from 375? Yeah, yeah, this is the document 89, page 15. This is Professor clearly identifying... I'm sorry, I'm looking at page 375. Appendix. Find the passage that you're referring to. Are you referring us at 375 to the paragraph that begins shills are a particular problem in internet auctions, is that what you want us to look at? Yes, let me see. Okay, give me one second. It would be more helpful just to keep us in the appendix rather than your brief. Okay, I think that in our brief, in my brief, give me a second, I think that... So in the opening brief, this is the figure ID and also the page... 14, I identify e-snapping. So online auction, the beta, all the beta. My question, my concern about your appeal is that you identify problems arguably that do plague online auctions, but it seems like there are also problems for non-online auctions. And it seems like all Professor Parson says is some of these are particular problems or maybe even bigger problems for online auctions, but none of that means that they're not also problems for offline auctions. So do you have anything we could look at that would say these are just online auction problems? Your Honor, I think that I do read my brief that the Professor Simmons identified the field is a particular problem for online auction, so you think about this way. In the live auction, how many people use figure ID? How many? Very few people, such as today I passed the auction. Do you think I will bring my figure ID? Maybe not. But online auction, the people can register with, okay, ABC is my name, and the email is very easy to register. So at this moment, the people use the figure ID and build up the price. That's called shield. I understand what you're saying is that the computation of the bids is not unique to online auctions, but the false identification is a problem for online auctions that doesn't exist for in-person auctions. Is that correct? Yes, that's true. So from the Professor Simmons, he identified because there's no effective solution to previous figure ID. And they can do much more. Okay, but it is correct that the mechanism for computing and re-computing the bid, all that could be a problem in an in-person auction as well as an online auction, right? Yes. Okay, so what you're saying is that this is uniquely dealing with the problem of identification? But I didn't understand that to be the invention here. Okay, Your Honor. So the problem is that the bidder, through the three unique features, that if these three unique features have been implemented through the reverse seal bid auction, then this figure ID is not effective anymore. So then the bidder doesn't have to register a figure ID to bid. So under these circumstances, the concern from the Professor Simmons has been resolved by an effective solution. When you say Professor Simmons, I think you mean Simon Parson. It's the same Professor Parson that we were talking about? Yes, Simon Parson. And also, Your Honor, if I refer to the document 64, page 13, the examiner... I'm sorry, is this in the appendix? No, my reply brief, document 64, page 13. The examiner made that in the second paragraph, the claims may speak to an improvement to seal bid means. So Your Honor, you see that part? I'm not sure if I do. It's on page 13 of your gray brief. Okay, so document 64, reply brief, page 13? The corrected one is 84, I believe. Can I just suggest something? I think you will be better off if you refer us to the appendix and different evidence you have as opposed to your briefs. Okay, so appendix 158 and appendix 1461. The USPTO examiner admitted that the claims may speak to an improvement to sealed bid means. Sealed bids is one of your two patent applications, is that right? Yes, and also I hold the reverse. The reverse means that people are looking for lower price. Sealed bid, looking for the higher price, higher price. So which part of 158 is supportive of your argument? Support that sealed bid. If my answer is correct. Right, it relates to sealed bids, I get that, but can you help us identify where on 158? So you said in one sentence, Your Honor, I don't bring my appendix. So the claim may speak to an improvement to sealed bid means. I'm still not understanding. You have agreed that the bid computation mechanism is not related to a computer that can be in a in-person auction as well as an online auction. You're saying that the invention deals with the problem of people using false identities in online auctions. Where did you identify that as the inventive concept here or the thing that made this patent eligible? Okay, Your Honor, so my invention I didn't understand that to be one of the three novel features that you relied on. Okay, Your Honor, if my invention has been implemented, I will reach the result that the fake ID is not effective anymore. So I reach the result is the target that the professor... I don't understand the connection. I mean, what does the bidding mechanism have to do with fake ID? Okay, Your Honor, may I explain to you? So the people use fake ID because they know who is bidding, how much they bid. So I run some page such as, okay, I bid $10. If the guy who is fake who wants to, oh, $10 is too slow, let me bid $20. In order for me to win, I have to bid $20 and more. So eventually the guy is fake. I bid, I pay more prices. However, if they still bid, so the guy who put a fake ID to bid... You're saying that the use of this bidding mechanism discourages the use of fake IDs. Yeah. Eventually, fake ID doesn't work anymore. Nobody uses fake ID because they don't know the price. Can you tell me where in, say, Claim 133 this is reflected? Where is this aspect recited in Claim 133? So fake ID? Your Honor, would you like a paraphrase? I would like to know where you've asserted the fake ID aspect is something that's a technological solution to a technological problem. I understand you to be asserting that. I want to know how that is included in the representative claim. Okay. Your Honor, I do not specify the fake ID in the claim. That's okay. If you tell me how the claim, what's recited in it, relates to fake ID, that would be helpful. Yeah, Your Honor. So I agree with you that in the claim, I don't specify that the invention will fix or resolve the fake ID. However, what I claim is that my invention will resolve the issue of fake ID because the people will not have any incentive to use fake ID. The purpose is open bid. I'll give you an example. I bid $10. People use fake ID for $20. In order for me to win, I should bid $20 and more. So therefore, that's an incentive for people to use fake ID to build up price. If you use a sealed bid, the guy has no way to know the price at all. So what purpose is fake ID? It makes no difference. However, if the people use the regular, the traditional sealed bid, I bid $10, people bid $20, there are a lot of negative things because people say, okay, I don't know the prices. I bid $100, but the second highest price will be $10. I bid too much, $90. I don't want to pass the sealed bid anymore. So therefore, I have to develop a mechanism to solve the problem. Do you agree that your sealed bid mechanism would result in solving some problems? Were it used in a non-online auction? The answer is yes, possibly. However, the sealed bid for online is not only the result of the fake ID, but also the sealed bid cannot be opened, such that if you open the prices, they cannot be called sealed bid anymore until the end of the auction. So the computer, to recognize the valid bid, such as the price lower than the start prices, rejects it. That does not happen in the live auction. Live auction is you seal the price, so give the people an option to open. Online auction, people submit the bid, such that if my price is too low, they reject it automatically. They have to through the computer. That's not a manual that can do it. That means that the sealed bid has to be on the computer, such that if the price is lower than the prices, then they become invalid, rejected by the computer without anyone else knowing it. They have to rely on the computer. Okay, I think we're out of time here. We'll give you two minutes for rebuttal. Okay. You have to sit down. Okay. I'd like to address the shilling and the sniping as a technical solution to a technical problem. The Parsons article that we were discussing earlier, even though on page 375 it talks about shilling as particularly, a particular problem in Internet auctions, on appendix 375. Before you start, help me. Was this argument that we're hearing today made below? I mean, it's a surprise to me. I thought the invention here was a novel method of calculating the bid, which made it fairer and so on and so forth. I didn't understand that it had to do somehow with preventing false identification. I believe below, Your Honor, there was a lot more talk about bad faith bidding in general and sniping and shilling. Now the blue brief has talked a little bit about fake IDs. But the shilling and the sniping were also discussed below. Was the argument made that this bid calculation methodology somehow eliminated the problem of fake IDs? I believe it was made, Your Honor, but not explained as to how that works. Appellant argued that the claimed three novel features resolve these problems. But the connection to how it would be resolved was not explained very well. The Parsons article also explains on Appendix 372 and 374 that shills and sniping were a problem and are a problem in live auctions. This is not a specific problem to online auctions. At 372, kind of in the middle of the page, there's a paragraph beginning, in any kind of auction with a closing time, sniping can be a problem and is observed in both internet auctions and their low-tech cousins, the silent auctions. So that's just the reference talking about sniping in general. And then two pages later, at the bottom of 374, Mr. Parsons says, shills, briefly mentioned in Section 2, are one way for sellers and auctioneers to manipulate the price in their favor. For example, in English auctions, Mr. Parsons goes on to explain the history of shilling. The blue brief on page 27 and 28 argues that the sealed bid part of the claims is what resolves everything. What resolves shilling, what resolves sniping, and the fake ID. It doesn't connect those two things, but that's the argument. And the specification does the same on Appendix 10. I'm sorry, it's not Appendix 10. It's the specification at Paragraph 10. So on Appendix 254, it's the end of Paragraph 10, the first full sentence. Since open auctions have many deficiencies, mainly because of publicly visible bid amounts, one of the ways to overcome these deficiencies is through sealed bid auction, where bid amounts are not disclosed during the time of the sealed bid auction. The claims are not directed to a technical problem nor a technical solution. Is that a question of fact or a question of law? I believe that the technical problem and technical solution usually don't involve a lot of fact. Here there are some, there's a Parsons reference, and so maybe that is an issue of fact in the actual reference. So how would we resolve it here? Because I understand Mr. Wang to be arguing he does have a technical solution to a technical problem. You're arguing the opposite. Is that something that's factual or that's something we decide as a matter of law? I think the overall decision, of course, Your Honor, is a matter of law that you would decide de novo. And I think that based on the whole record, the record as a whole, even the arguments that Appellant makes in the blue briefs, you can, there's no question here that even the Appellant has said that sealing the bids is the thing that solves the problem. Can I ask you a question? Do I understand you to be saying the abstract idea, the abstract claims are directed to an abstract idea of mitigating risk or having a sealed auction and that that, it's not a technological solution to a technological problem because this same concept could apply even off computer and the computer is being used for conventional purposes. Is that your position? Yes, Your Honor. I think that's exactly our position. The claims themselves are directed to, as the Appellant himself says in the specification, mitigating risks to sealed bid auctions. I think maybe online sealed bid auctions. That's still an abstract idea. And all of the technology involved in this invention are just general computers, general generic computing elements and that does not draw the claim out of the abstract realm. At step two, Mr. Wang writes, it happens to be in his reply brief at 17, but he says there's no record to support any of the three novel features of the claim dimensions, being well-known routine and conventional activities in the relevant auction industry. Is he right? There's no record to support that? And if he's right about that, how could we affirm? I don't think that that statement is not supported, Your Honor, because the, there were three novel features argued. Two of them the board found were part of the abstract idea itself. And that was the receiving the bids. And I think it was the receiving and the collection of the bids. The three novel features are solely concerned with the bidding mechanism, right? That's correct. Okay. So if the bidding mechanism is something that could solve problems for an in-person auction, then it's not unique to the computer environment. I agree, Your Honor. And did you have anything further to say about the third of the three purportedly novel ideas? So the third of the three novel ideas was the allocation of the bid to the different parties that are involved in the auction and displaying them in the claim. It is claimed as a display of the allocation of bids. So again, they're a part of the auction itself and any technology is just in pushing that out to the display, which is also abstract. If there are no further questions, I will yield my time. Okay. Thank you. Mr. Wang, you have two minutes. So, Your Honor, so I want to focus on arguing related to inventive concept. So, Your Honor, when you have time, read the brief from the both parties. I don't think that the government brief or opposition brief talk about anything related to the inventive concept that I present is not eligible. They oversimplified my inventive concept. So they don't provide any evidence to prove the commitment, recalculation, and allocation of the three features that are practiced in any traditional auction or online auction. They did not. So therefore, by itself, the government did not meet their burden to reject my patent applications. So I think they always have some little bit of experience for auctions. When you lose in the auction, you don't get anything, even one penny. Why? You lose. The winner win the auction, they pay the money, get something. So if you lose, nothing. But in this auction that I present, assume that your price is at some point like a second high price, I use the reference, you get some money. That's the non-generic, never happened in the pre-art era, and this is the inventive, because the loser gets some portion of the money from the auction. So you read the government brief. They did not reject my inventive concept. They talk nothing about my inventive concept. They only talk about the mitigated risk. Actually, the government is wrong, because my invention not only mitigates risk, my invention at some point is uncertain risk. The uncertain risk is totally different mitigate risk. So at some point, the price is higher than the price you bid. Sometimes it's lower. If it's lower, of course you mitigate risk. At some point, higher than you bid, you increase risk. I think we're out of time.